UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

HUMBERTO FRIERRE,

                  Defendant.

------------------------------------X

09 Cr. 937-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On October 21, 2011, Humberto Frierre[1] ("Defendant") pleaded guilty to one count of conspiracy to transport stolen goods worth more than $5,000 in violation of 18 U.S.C. § 371 ("Count 1"). For the reasons set forth below, the Defendant will be sentenced to a term of imprisonment of 46 months, and a term of supervised release of two years.

**Prior Proceedings**

On September 30, 2009, indictment 09-CR-937 (RWS) was filed in the Southern District of New York, charging that in

---

[1] Although court records spell the defendant's surname "Frierre," in fact the correct spelling is "Friere." To avoid confusion, the defendant will be referred to as "Defendant" in this opinion.

1

November 2006, in the Southern District of New York and elsewhere, the Defendant and an individual named John Porras ("Porras") conspired to transport, transmit, and transfer in interstate and foreign commerce goods, wares, merchandise, securities and money, of the value of $5,000 and more, knowing the same to have been stolen, converted, and taken by fraud, in violation of 18 U.S.C. § 2314.

On October 21, 2011, the Defendant appeared before the Honorable Henry B. Pitman in the Southern District of New York and allocated to his criminal conduct as charged in Count 1 in accordance with a plea agreement which stipulates the following:[2]

- Pursuant to §2B1.1(a)(1), the base offense level is 6.

- Pursuant to §2B1.1(b)(1)(G), because the intended loss amount was more than $200,000 but less than $400,000, twelve levels are added.

- Pursuant to §2B1.1(b)(3), because the offense involved a theft from the person of another, two levels are added.

- Pursuant to §2B1.1(b)(13), because the offense involved the conscious or reckless risk of death or serious bodily injury and the possession of a dangerous weapon in

---

[2] Unless otherwise noted, all citations in this opinion are to sections of the November 1, 2012, edition of the United States Sentencing Guidelines ("Guidelines").

2

connection with the offense, two levels are added.

- Because the defendant was a minor participant in the offense, two levels are subtracted, pursuant to §3B1.2(b).

- Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to §3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional 1-level reduction is warranted, pursuant to §3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

- In accordance with the above, the applicable Guidelines offense level is 17.

- Based upon the information now available to the U.S. Attorney's Office, the defendant has 12 criminal history points, which places him in Criminal History Category V.

- Based upon the calculations set forth above, the defendant's sentencing Guidelines range is 46 to 57 months (the "Stipulated Guidelines Range"). In addition, after

3

determining the defendant's ability to pay, the Court may impose a fine pursuant to § 5E1.2. At Guidelines level 17, the applicable fine range is $5,000 to $50,000.

- The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court consider any such departure or adjustment.

- The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, and suggest that the Court consider a sentence outside of the Stipulated Guidelines Range, based upon the factors to be considered in imposing a sentence pursuant to 18 U.S.C. § 3553(a).

The Defendant's sentencing is currently scheduled for March 25, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as

set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to the Defendant's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that document.

This case involved a crew ("Crew") that hijacked trucks, kidnapped the drivers of those trucks, and then robbed the drivers forcibly of the contents of their trucks. Porras participated in one of the kidnappings and armed robberies.

On November 13, 2006, the Crew committed a kidnapping and armed robbery. That afternoon, German Cuadrado, who was with Rafael Rodriguez, Jorge Cedeno, Saile Parra and Jorge Flores, received a phone call from an individual named "Ramoncito." Ramoncito told Cuadrado that he and several of his associates were in a van following a truck full of cellular phones. Ramoncito asked Cuadrado if he and his crew would join him, so that they would be able to hijack the truck, kidnap the driver and rob the driver of his cargo of cellular phones. Cuadrado consulted with Rodriguez, Cedeno, Parra and Flores and the crew agreed to meet up with Ramoncito for the purposes of hijacking the truck.

Cuadrado, Rodriguez, Cedeno, Parra and Flores, who were driving in two separate cars, met with the Ramoncito and his crew in New Jersey on Interstate Route 80, heading west, and began following the truck full of cell phones. When the truck, which was being driven by Frank Karzenowski, Jr., stopped at a

7

rest area in Allamuchy Township, New Jersey, at approximately 7:00 P.M., the entire Crew stopped at the rest area as well. Once there, Cuadrado instructed Rodriguez and Cedeno to enter the cab of the truck and restrain the driver, who had not exited the truck.

Rodriguez and Cedeno, both brandishing firearms, entered the truck, and one of them struck Karzenowski in the head with the butt of a gun, causing Karzenowski to bleed profusely. Rodriguez and Cedeno then restrained Karzenowski with plastic flex ties and forced him to lie face down in the sleeper cabin of his truck. Cuadrado then entered the truck and began to drive it back east. Parra, Flores, Ramoncito and the others followed in their own cars.

Cuadrado eventually parked the truck on a street in the Bronx, New York. Once the truck was parked, Cuadrado, Rodriguez and Ramoncito's group left to attempt to locate a buyer for the load of cellular phones, taking four sample phones with them and leaving Cedeno, Parra and Flores to guard the truck. Karzenowski was still restrained in the back of the truck during this period. Parra left after several hours, leaving Cedeno and Flores with Karzenowski. Cedeno and Flores

8

eventually exited the cab of the truck, at which point Karzenowski was eventually able to free himself from his bindings and escape by driving his truck away. The crew did not make any profit from this job, since Karzenowski escaped with his truck, which was still full of its load of cellular phones.

According to the Government, Porras was in a van with Ramon Villegas and the Defendant for the duration of the crime. Porras and the Defendant did not exit the van at any point during the hijacking and kidnapping, but were fully aware of what was occurring, and had agreed with the co-conspirators to steal the truck at issue. Porras and the Defendant were prepared to transport the stolen merchandise from Allamuchy Township, New Jersey, to the Bronx, New York.

**The Relevant Statutory Provisions**

Count 1 mandates a maximum term of imprisonment of 5 years, pursuant to 18 U.S.C. § 371. In addition, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

The Defendant is eligible for not less than one nor

more than five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine for the offense conduct is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

In addition, as a result of committing the offense alleged in Count 1, the Defendant shall forfeit to the United States, pursuant to 18 U.S.C. §§ 1963(a)(1)-(3), all property real and personal, involved in the offense or traceable to such offense. Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

**The Guidelines[3]**

As set forth above, pursuant to the Defendant's plea agreement, his adjusted offense level is 20, which is reduced by

---

[3] The November 1, 2012 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes.

three levels due to the Defendant's minor role in the offense conduct, see U.S.S.G. §3B1.2(b), and his recognition of responsibility and timely notification of intent to plead guilty, see id. §3E1.1(a) & (b). The Defendant's total offense level is therefore 17.

The Defendant's relevant criminal history is as follows:

- On November 13, 1997, the Defendant was found guilty in Bronx County Criminal Court of criminal possession of stolen property. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this results in one criminal history point.

- On October 15, 1998, the Defendant was found guilty in Bronx County Supreme Court of driving while intoxicated. Pursuant to Guidelines §§ 4A1.1(c) and 4A1.2(e)(2), this results in one criminal history point.

- On March 21, 2001, the Defendant was found guilty in Nassau County Court of two separate incidents of operating a motor vehicle while under the influence of alcohol. Pursuant to Guidelines §§ 4A1.1(a) and 4A1.2(e)(1), the conviction on the first offense results in three criminal history points. Pursuant to Guidelines §§4A1.1(a), 4A1.2(a)(2) and 4A1.2(e)(1), the second offense also results in three criminal history points.

- On May 18, 2006, the Defendant was found guilty in Queens County Criminal Court of possession of a forged instrument in the third degree. Pursuant to Guidelines §§ 4A1.1(c) and 4A1.2(e)(2), this results in one criminal history point.

- On January 26, 2009, the Defendant was found guilty in

11

Bronx County Supreme Court of false personation. Pursuant to Guidelines § 4A1.2(c)(1), this results in zero criminal history points.

- According to the Defendant's NCIC record, from 1987 through 1996, the Defendant was arrested and/or convicted at least five times in addition to the above. These convictions include: driving while ability impaired, driving while intoxicated, operating a motor vehicle while under the influence of alcohol, and attempted criminal sale of a controlled substance in the third degree. None of these arrests and/or convictions result in criminal history points.

Given the above, the Defendant's criminal history results in a nominal criminal history score of nine. At the time the instant offense was committed, the Defendant was under a criminal justice sentence of conditional discharge for the May 18, 2006, conviction for possession of a forged instrument. Pursuant to §4A1.1(d), two points are added to the Defendant's nominal criminal history total, resulting in a net total of eleven. According to the Guidelines, Chapter 5, Part A, five criminal history points establish a Criminal History Category of V. The Defendant therefore has a total offense level of 17 and a Criminal History Category of V.

For a total offense level of 24 and a Criminal History Category of III, the guideline range for imprisonment is 46-57 months.

The guideline range for a term of supervised release is at least two, but not more than three years, pursuant to §5D1.2(a)(2). If a sentence of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to §5D1.1(b). Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to §5D1.1(a).

Because the applicable guideline range is in Zone D of the Sentencing Table, the Defendant is not eligible for probation, pursuant to §5B1.1, Application Note #2.

The fine range for the instant offense is from $5,000 to $50,000 pursuant to §5E1.2(c)(3)(A). In addition, subject to the Defendant's ability to pay, in imposing a fine, the Court considers the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,407.78 to be used for imprisonment, a monthly cost of $286.11 for supervision, and a monthly cost of $2,180.27 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines, all of the factors set forth in § 3553(a), and the arguments set forth in the Defendant's sentencing memorandum, it is concluded that a downward departure from the Guidelines sentence is not warranted in the instant case.

The Defendant in this case pled guilty to conspiracy transport stolen goods. In the instant offense, a crew hijacked a truck at gunpoint, assaulted the driver by hitting him in the

14

head with the butt of a gun, and then restrained the driver, tied him up, and forced him to lay facedown in the sleeper cabin of his truck while the truck was driven to another location. While the Defendant did not participate in the hijacking or robbery, he was fully aware of what was occurring and agreed with his co-conspirators to steal the truck and sell its contents.

The instant offense represents the Defendant's twelfth known arrest and conviction. A sentence within the Guidelines range will address the sentencing objectives of providing punishment for the offense and affording adequate deterrence to future criminal conduct, as well as monitoring the Defendant when he returns to the community (provided he is not deported following his release from prison[4]).

The Defendant's extensive criminal history indicates that he is a recidivist, and the fact that he is being sentenced for yet another crime suggests that his previous experiences with the criminal justice system have not served as a deterrent

---

[4] The Defendant is a native of Ecuador and a legal resident of the United States. He has indicated that he may be amenable to removal proceedings following his release from prison for violations of the Immigration Act.

to criminal behavior, and indeed that the nature of his criminal behavior is becoming progressively more severe. As such, a sentence of 46 months' imprisonment, followed by two years of supervised release—which is at the low end of the Guidelines range—is warranted in this case.

**The Sentence**

For the instant offense, the Defendant will be sentenced to a term of imprisonment of 46 months.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

Due to the Defendant's limited assets, no fine is imposed.

The Defendant shall forfeit to the United States any and all property constituting and derived from any proceeds obtained directly or indirectly as a result of the instant offense, pursuant to 21 U.S.C. § 853. Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows

of the forfeiture at the sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

Due to the Defendant's compliance with all of the terms and conditions of his pretrial release, and the fact that he is not viewed as a flight risk or a danger to the community, the Defendant will be permitted to voluntarily surrender.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for March 25, 2013.

It is so ordered.

**New York, NY**
**March 21, 2013**

_____
ROBERT W. SWEET
U.S.D.J.